IN THE DISTRICT COURT OF THE UNITED STATES
SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

UNITED STATES OF AMERICA,
ex rel., TED WHITTEN,
(Relator),

        Plaintiff,

                          CIVIL ACTION FILE
vs.                    NO. CV202-189

QUORUM HEALTH GROUP, INC.,
TRIAD HOSPITALS, INC., As
Successor to
QUORUM HEALTH GROUP, INC.,
QUORUM HEALTH RESOURCES, INC.,
and QUORUM HEALTH RESOURCES, LLC,
        Defendants.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

VIDEOTAPED DEPOSITION OF
TED WHITTEN
VOLUME II
9:31 A.M.
June 27, 2007

440 College Avenue
Athens, Georgia   30603
Lee Ann Barnes, RPR

Ted Whitten                                                          June 27, 2007

Page 178

A. If we continued -- if we continued to bill for items not -- not -- that were inappropriate, that's fraudulent.

Q. Well, was there a continuation of charges of $18.8 million, to your knowledge, after December of 1999?

A. I -- I can't be specific about the amount. I just know that it wasn't until 2000 that the Chargemaster was completed.

MR. LUCE: Give us just a second.

(Thereupon, there was an interruption in the proceedings.)

Q. (By Mr. Luce) Mr. Whitten, can I ask you to look at Exhibit 10 of your amended complaint.

A. Yes, sir.

Q. Is this an e-mail chain that was among the materials that you took from the hospital?

A. I couldn't tell you, sir.

Q. Well, let me represent to you it was provided to us as the exhibit to the complaint you filed.

A. What was your question again? I'm sorry.

Page 179

Q. I just asked: Is this part of the e-mail communications that you took from the hospital and had stored at your residence?

A. Yes, sir.

Q. Well, now, look, please, at the -- towards the bottom of that page.

MR. GARRARD: Which page are you talking about?

MR. LUCE: The first page of your Exhibit No. 10.

Q. (By Mr. Luce) Do you see the heading "S. Keller at QuadraMed"?

A. I do.

Q. Okay. "To Ray Owings" --

A. I do.

Q. -- is that right?

Read aloud the message that she sent to Mr. Owings, please.

A. "I thought you might find this interesting. It is a memo we were provided by a client regarding the corporate initiative for routine supplies and equipment. This is a very large corporation. The particular hospital did an estimate of expected loss and it came to $26 million for their facility

Page 180

alone. We haven't completed that project yet, but the final number will be in excess of 30 million."

Q. Is it your understanding that she's referring to a client of theirs other than the Brunswick Hospital?

A. That's my assumption, sir.

Q. All right. This isn't referring to the hospital that you worked for, is it?

A. I don't believe it -- I did not believe it did.

Q. All right. Now, the next part of that message says, "From Ray Owings to Sue Keller." It says, "The following represents the method we intend to use."

Is it your understanding that this literally does refer to the hospital?

A. Yes, sir.

Q. Okay. And that is the same methodology that -- and the same -- from the communication that we looked at here as Exhibit 72 --

A. Yes, sir.

Q. -- right?

MR. LUCE: Okay. Why don't we take

Page 181

a break here for a moment.

MR. BLASINGAME: Sure.

VIDEOGRAPHER: Off the record.

(Thereupon, there was an interruption in the proceedings from 2:57 p.m. to 3:11 p.m.)

VIDEOGRAPHER: Stand by. On the record.

Q. (By Mr. Luce) Mr. Whitten, one last question here about the Charge Description Master.

Did you ever seek the advice of legal counsel in terms of -- well, let me rephrase.

While you were the compliance officer, did you ever have occasion to seek the advice of legal counsel regarding the implementation of the Charge Description Master changes?

A. I don't know. I don't remember.

Q. Well, so you can't remember whether you sought the advice of legal counsel or not on --

A. We sought the advice of legal counsel all the time, but I can't recall if

46 (Pages 178 to 181)

Ted Whitten

June 27, 2007

Page 182

there was a particular issue on that.

Q. Oh, okay.

Do you recall receiving advice from legal counsel regarding the cardiac rehabilitation unit operations?

A. We sought legal counsel. I'm not sure if we ever got any definitive answer on that.

Q. Did you ever find yourself in disagreement with the advice provided by legal counsel on any compliance issue?

A. Nothing comes to mind, sir.

Q. I may have asked this before -- forgive me because it was yesterday -- but I thought you testified that were not aware of any subpoenas directed to the hospital while you were the compliance officer.

A. The only --

Q. Are you aware of any subpoenas directed to the hospital?

A. The only one that I became aware of was TriCare, and that's the one I can remember.

Q. All right. With respect to that subpoena, did you participate in the gathering

Page 183

of --

A. No, sir.

Q. -- production of documents?

A. No, sir.

Q. Do you know -- do you know a Mr. Gregory Britton?

A. Gregory Britton? That name is familiar to me, sir. I think he may have worked in HR.

Q. I'm going to show you a document that we have previously attached to some pleadings.

MR. LUCE: And I'll ask that that be marked as Exhibit 73, I believe.

(Exhibit-73 was marked for identification.)

Q. (By Mr. Luce) Were you aware at any time that Mr. Britton had brought a qui tam lawsuit against the Brunswick Hospital Authority?

A. No, sir.

Q. Mr. Britton alleges in this complaint at paragraph 5 on the second page that he was employed at the hospital from June '96 through February of 1999 and

Page 184

participated in an audit of various patient charts and medical records.

Does that refresh your recollection as to whether or not you ever had any contact with Mr. Britton?

A. No, sir. I know that he worked in HR, but I don't recall any audit he did or wasn't aware of one. I don't know how he could audit patient charts and medical records, because he -- I don't think he was a clinical person.

Q. Well, what is your recollection of his professional skills?

A. I just know that he worked in HR. That's what I believe.

Q. And it's your testimony that you were unaware of this commencement of litigation against the hospital?

A. No, sir.

MR. BLASINGAME: Excuse me. He said it's your testimony that you were unaware of this commencement of litigation against the hospital and you said, "No, sir."

MR. LUCE: All right. Thank you.

Page 185

Q. (By Mr. Luce) Okay. Let me put it another way.

Prior to my showing you this complaint, were you aware that Mr. Britton had brought a qui tam suit against the hospital?

A. No, sir.

Q. And you hadn't seen this complaint --

A. No, sir.

Q. -- as an exhibit to -- you have to let me finish the question. You just never know what "no" or "yes" might take you into.

But you hadn't seen this complaint before today; is that your testimony?

A. I don't believe I have, sir.

Q. Let me show you the next exhibit that I'd like you to consider.

MR. LUCE: I'd ask that that be marked as Exhibit 74.

(Exhibit-74 was marked for identification.)

Q. (By Mr. Luce) Have you ever seen this document?

A. No, sir. I don't even know what it is.

Ted Whitten                                                                 June 27, 2007

Page 186

Q.   Were you aware that there was a settlement agreement struck between the hospital and the United States Department of Justice?

A.   No, sir.

Q.   Let me ask you to look at page 2 of this settlement agreement.  It's one long paragraph starting at B.

A.   Starting at B?

Q.   Starting at B.  It starts with B.  I just want to -- I'm going to orient you to where in this paragraph I want you to look at.

Let me ask you to look here at about midway through.  It says, "The United States contends that if the TriCare claims had been coded...."

Do you see that?

A.   Yes, sir, I see it.

Q.   Okay.  Now, in that sentence that follows, it says, "Southeast Georgia Regional Medical Center and Camden Medical Center have disclosed to the United States the following potential billing issues relating to observation charges."

Do you see that?

Page 187

A.   Yes, sir.

Q.   Okay.  Would you read for me the two enumerated sentences that are described here?

A.   "One, patients placed on observation status without appropriate documentation of medical necessity; and number two, patient status changed to observation status after admission.

Q.   Are these items substantially the same as those that you have alleged in your complaint constitute violations of Medicare billing related to observation status?

MR. BLASINGAME:  I'm going to object to the form of the question, because your question doesn't relate to the area that this relates to and it doesn't relate to the interpretation placed upon this by the government and the hospital at the time or the government submission in this case about that.

Q.   (By Mr. Luce)  You can answer the question.

A.   I -- those are the issues that -- those are some of the issues that I allege -- alluded to earlier, yes.

Page 188

Q.   And those were alluded to in your complaint, as well?

A.   Yes, sir.

Q.   Now, this says that "the Medical Center has disclosed to the United States some billing issues."

Did you participate as a compliance officer in any disclosure of those issues --

A.   No, sir.

Q.   -- to the government?

A.   No, sir.

Q.   I want to show you some documents that relate to the focused medical review process and ask if they're familiar to you.

MR. LUCE:  So we'll mark the next one as 75.

(Exhibit-75 was marked for identification.)

Q.   (By Mr. Luce)  Do you recall ever seeing this document?

A.   No, sir.

Q.   Do you recall engaging in any activities responding to a focused medical review regarding observation services at the hospital?

Page 189

A.   No, sir.

Q.   Now let me next show you a document produced to us by the hospital that we'll mark Exhibit 76.

(Exhibit-76 was marked for identification.)

Q.   (By Mr. Luce)  Do you recognize this document?

A.   No, sir.

Q.   On November 20, 1998, had you commenced your duties as the compliance officer for the hospital?

A.   Could you repeat that, sir?  I didn't --

Q.   As of November 20, 1998, had you commenced your duties as the compliance officer --

A.   Just started, sir, yes, sir.

Q.   -- at the hospital?

I'm going to next show you a document that we'll mark as Exhibit 77.

(Exhibit-77 was marked for identification.)

Q.   (By Mr. Luce)  This is a document received by us from the hospital.  It's dated