UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. CV202-189 |
| ex. rel. TED WHITTEN, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| TRIAD HOSPITALS, INC., as successor | : | |
| to QUORUM HEALTH GROUP, INC., | : | Brunswick, Georgia |
| | : | September 9, 2005 |
| Defendant. | : | 2:00 p.m. |
| | : | |

ORAL ARGUMENT ON DEFENDANT'S SECOND MOTION TO DISMISS
BEFORE THE HONORABLE ANTHONY A. ALAIMO
United States District Judge

Reported By:                Norma Hatfield
                            Official Court Reporter
                            801 Gloucester Street, Rm. 216
                            Post Office Box 1316
                            Brunswick, Georgia 31521-1316
                            (912) 262-9989  FAX (912) 262-9100
                            normah@thebest.net

Then paragraph twelve is equally important on the next page, page eleven, Judge. This, I believe, sort of defines who this document is meant to protect.

It says, "This Agreement is intended to be for the benefit of the Parties only and by this instrument the Parties do not release any claims against any other person(s) or entity."

And if one goes back to the very beginning page of the document, Judge, "Parties" are defined in paragraph number one. And the Parties does not include, by any stretch of the imagination, Quorum.

So I think it's important that one has to look at this document.

THE COURT: Was Quorum not an agent?

MR. GARRARD: Yes, sir. But where "Parties" are defined, Judge, Quorum is not listed in here. Agents are not listed in here where the parties are defined.

So paragraph number twelve is a limiting paragraph where it says that "This Agreement is intended to be for the benefit of the Parties only and by this instrument the Parties do not release any claims against any other person(s) or entity."

THE COURT: Who do you say the parties are?

MR. GARRARD: The parties, as they are described in here, Your Honor, are Tricare Management Activity --

THE COURT: Parties not activity. Who are the parties?

MR. GARRARD: The parties are Glynn-Brunswick Memorial Hospital d/b/a Southeast Georgia Regional Medical Center and Kings Bay Community Hospital, Inc. d/b/a Camden Medical Center, a wholly owned subsidiary of the Glynn-Brunswick Memorial Hospital.

Those are the releasing parties insofar as "Parties" are defined. Now I do --

THE COURT: Would those include the agents and servants?

MR. GARRARD: Your Honor, I didn't draw --

THE COURT: As a matter of law, would they not? How else --

MR. GARRARD: Well, if paragraph twelve was not there, Judge, they -- one could certainly argue that, and I couldn't say you're wrong. But paragraph twelve appears to be a limiting paragraph because it says it's intending to be for the benefit of the parties only.

THE COURT: The parties includes whom?

MR. GARRARD: The parties, by their definition, include Glynn-Brunswick Memorial Hospital Authority d/b/a Southeast Georgia Regional Medical Center and Kings Bay Community Hospital d/b/a Camden Medical Center. That's how they define it.

THE COURT: I understand that. But that includes their agents and officers.

MR. GARRARD: That certainly is the argument that Mr. Luce makes.

THE COURT: I think -- okay.

MR. GARRARD: I didn't draw the instrument, Your Honor.

THE COURT: I know. I am not blaming you.

MR. GARRARD: I understand. But I do believe that paragraph twelve is due to be considered the mean in terms of the limitation of the document.

Now let me state this, as well. A question that we ought to answer, I believe, is, okay, if the Court says Quorum is entitled to the benefit of the government release -- if that's the Court's determination -- what does that mean is given up here by that document?

We recognize that you can't recover on behalf of the government twice for the same thing. So to the extent Quorum is entitled to the benefit of that document -- if that's the Court's determination -- then the limitation of that is to the extent the government was made whole from matters of the covered conduct, and that's all. And the covered conduct is very limited insofar as this document is concerned.

I have acknowledged that Mr. Whitten, on behalf of

the government, cannot and does not have the ability to recover twice on behalf of the government for the same thing.  So if they're entitled to the benefit of that document, that's the limit to which we submit they are entitled to it.

Your Honor, those are our positions insofar as the release.  Mr. Jordan may have something he wants to add.  I don't know if the Court --

MR. JORDAN:  If the Court would indulge me, Your Honor?

THE COURT:  How many more do we have?

MR. JORDAN:  This is it as far as I know.

Mr. Luce spent thirty minutes of his argument talking about the severance release that Mr. Whitten executed and said that it was inartfully drafted.  Certainly not by Mr. Whitten's present counsel.  I know two people who drafted it.  They were me and Wallace Harrell.  And I suspect that the Court would take judicial notice that those two individuals have done a few releases in their day.

The second thing that I would like to bring up apropos of what Mr. Garrard said about rhetoric, I think if you look at some of the documents that have been filed by Mr. Luce's firm in this case, you will find some pretty amazing charges, charges that say that Mr. Whitten concealed things from the government; that these lawyers sitting

around this table concealed things from the government and concealed things from this Court; and, in effect, perpetuated fraud, not only upon Mr. Coursey and the government but upon this Court.  That's tough stuff.

I've been practicing in this court for twenty-five years, but it took this case to have somebody accuse me of misconduct like that.  I'm glad, however, that the Court has seen that because it gives the Court, I believe, a flavor of what we have been up against in trying to prosecute this case for a man who worked for the hospital for thirty years, and during his last employment was in charge of making sure that the billing was done correctly.  He was the point man for that job.  That's why he is a relator, and that's who we're trying to represent.

I think the charges that Mr. Luce and his firm have made are unfortunate.  And I think they're baseless. But I think equally as baseless is their suggestion that this severance release that Mr. Harrell and I negotiated, and as we have for the last twenty-five years, come to a decent resolution of a problem, for them to suggest that this kicks Mr. Whitten out of court is equally baseless because, to say that, you have ignore -- anybody would have to ignore the plain meaning of the words.

And the words in the last paragraph say if Mr. Whitten is thinking about suing Quorum, then nothing in this

release should stop him.  That's the plain meaning of the words.

Thank you, Your Honor.

THE COURT:  Let me ask you this, Mr. Jordan:  What about the contention that he was merely relating what he had heard from other people at the hospital?  In other words, he was not the originator?

MR. JORDAN:  There was not a sole who worked in that hospital that was charged with more knowledge about whether the billing practices were correct or incorrect than Mr. Whitten.  That was his job.  He was the compliance officer.  He was there to be the whistleblower inside the hospital if the billing wasn't being done in compliance with the regulations.

The evidence will show he tried to do that.

THE COURT:  All right.  Briefly?

MR. LUCE:  Yes, Your Honor.

Your Honor, I practice law all over the country, and I know when I'm accusing somebody of making a misrepresentation.  So the "checkers speech" by Mr. Jordan is not something that I appreciate.  I have not made an attack on any of these counsel.  So I want to make clear we are not.

I have been home cooked before, and I will probably be home cooked again.  But I trust the Court will