## AFFIDAVIT OF WILLIAM R. MITCHELSON, JR.

1.

My name is William R. Mitchelson, Jr. I am over twenty-one years of age and I am competent to give this testimony. I have personal knowledge of the facts set forth in this Affidavit. The information contained herein is true and correct to the best of my information and belief after due investigation. I submit this Affidavit in support of the Non-Party Camden Medical Center's Motion to Quash Relator's August 17, 2007 subpoena and for other purposes allowed by law.

2.

I am a partner at the law firm of Alston & Bird LLP ("Alston & Bird") in Atlanta, Georgia. I have been practicing law for the past 21 years. I represented Camden Medical Center ("CMC") at all times relevant hereto.

3.

I submit this Affidavit to authenticate certain documents attached hereto as Exhibit A. Glynn-Brunswick Memorial Hospital Authority d/b/a Southeast Georgia Regional Health System and Kings Bay Community Hospital, Inc. d/b/a Camden Medical Center (collectively "SGHS") began receiving subpoenas from various government entities including the United States Department of Defense and the United States Department of Justice in May 1999. During the government investigation, SGHS was represented by Alston & Bird and Wallace Harrell of Gilbert, Harrell, Sumerford & Martin. The documents attached as Exhibit A were created by Alston & Bird and are correspondence transmitted at or near the time of the government investigation regarding claims submitted by SGHS to the government. The information contained in this

LEGAL02/30499311v1

correspondence was transmitted by a person with knowledge and the correspondence has been maintained in the course of Alston & Bird's regularly conducted business activity. Neither the source of information, nor the method or circumstances of preparation, indicate a lack of trustworthiness for the correspondence.

4.

Certain documents attached as part of Exhibit A were transmitted but Alston & Bird was unable to locate a signed version of the documents in its files. In the instances where we could not locate the signed copy, we have attached a final, albeit unsigned version of the correspondence retrieved from electronic storage.

5.

During the investigation, the government focused on SGHS's billing practices for patients whose care required the use of durable medical equipment, principally in connection with CHAMPUS/TRICARE claims. The government also sought documents related to SGHS's efforts to address related issues concerning the Medicare program. In response to the subpoenas received by SGHS, the hospitals produced non-privileged, responsive documents to the United States Attorney's Office for the Southern District of Georgia or to its case agents.

6.

During the course of the government investigation, the following bates ranges were produced to the United States Attorney's Office for the Southern District of Georgia or its to case agents:

(a) SGR 000001-063940
(b) CMC 0000001-0219793
(c) Camden 00001-04730
(d) SGHS 0001-0458

- 2 -

(e) Q 00001-01094

7.

On October 21, 2002, after the investigation conducted by the United States Attorney's Office for the Southern District of Georgia, Glynn-Brunswick Memorial Hospital Authority, d/b/a Southeast Georgia Regional Medical Center, settled certain potential Civil False Claims Act other claims with the Department of Justice. The settlement resolved SGHS's liability to the United States for conduct including improper billing for durable medical equipment and supply charges.

8.

I hereby declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

This 23rd day of August, 2007.

_____
WILLIAM R. MITCHELSON, JR.

Sworn to and subscribed before me
This 23 day of August 2007.

_____
Notary Public

-3-

# EXHIBIT A

# ALSTON&BIRD LLP

One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309-3424

404-881-7000
Fax: 404-881-4777
www.alston.com

Kurt R. Erskine                          Direct Dial: 404-881-7932              E-mail: kerskine@alston.com

March 31, 2000

Michael L. Northrup, Special Agent
Department of Defense
Defense Criminal Investigative Service                **VIA HAND DELIVERY**
Southeast Field Office
2400 Herodian Way, Suite 420
Smyrna, Georgia 30080-8500

          Re:     **Subpoenas Duces Tecum for Southeast Georgia Regional Medical
                  Center and Camden Medical Center**

Dear Mr. Northrup:

          Transmitted with this letter are four additional boxes of documents that are
responsive to the Subpoena Duces Tecum issued to Southeast Georgia Regional Medical
Center and Camden Medical Center on February 11, 2000. These documents bear Bates
Numbers SGR 51526 through SGR 61740 and CMC 218580 through CMC 219793.

          Please do not hesitate to contact me if you have any questions or concerns
regarding this matter.

                                                    Sincerely,

                                                    Kurt R. Erskine

KRE:sh/Encls.
cc:  Paul Murphy, Esq. (w/o encls.)
ATL01/10716668v1

1211 East Morehead Street          3605 Glenwood Avenue, Suite 310          601 Pennsylvania Avenue, N.W
P. O. Drawer 34009                 P. O. Drawer 31107                       North Building, 11th Floor
Charlotte, NC 28234-4009           Raleigh, NC 27622-1107                   Washington, DC 20004-2601
704-331-6000                       919-420-2200                             202-756-3300
Fax: 704-334-2014                  Fax: 919-420-2260                        Fax: 202-756-3333

07SEG0057508

Michael L. Northrup, Special Agent
March 31, 2000
Page 2

bcc:    Mitch Mitchelson, Esq.
        Nancy Greenwood, Esq.

07SEG0057509

# ALSTON&BIRD LLP

One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309-3424

404-881-7000
Fax 404-881-7777
www.alston.com

William R. Mitchelson, Jr.          Direct Dial: 404-881-7661          E-mail: mmitchelson@alston.com

March 31, 2000

Michael L. Northrup, Special Agent          *VIA: HAND DELIVERY*
Department of Defense
Defense Criminal Investigative Service
Southeast Field Office
2400 Herodian Way, Suite 420
Smyrna, Georgia 30080-8500

Re:    **Southeast Georgia Regional Medical Center and
       Camden Medical Center**

Dear Mr. Northrup:

Transmitted with a hard copy of this letter are four boxes of documents in the custody and control of our clients, Southeast Georgia Regional Medical Center ("SEGRMC") and Camden Medical Center ("CMC"), that are responsive to the subpoenas issued to them on February 11, 2000. These documents bear Bates Numbers SGR 51526 through SGR 61740 and CMC 218580 through CMC 219793. In preparing this document production, we noted the following:

1.    The fifth request asks for all SEGRMC or CMC correspondence, directives, documents, manuals, memoranda, policies regarding billing procedures for durable medical equipment and medical/surgical supplies pertaining to private insurance companies and/or private individuals. We have been informed by our clients that there are no documents that are responsive to this request.

2.    The seventh request asks for the personnel file of James D. Benefield, Jr. Mr. Benefield has never been employed by SEGRMC or CMC. Our clients, therefore, do not have a personnel file for Mr. Benefield that would be responsive to this request.

3.    The seventh request asks for Raymond Owings personnel file. Mr. Owings' personnel file is not in our client's custody and control. Because Mr. Owings is a Quorum employee, Quorum maintains his personnel file.

1211 East Morehead Street
P. O. Drawer 34009
Charlotte, NC 28234-4009
704-331-6000
Fax: 704-334-2014

3605 Glenwood Avenue, Suite 310
P. O. Drawer 31107
Raleigh, NC 27622-1107
919-420-2200
Fax: 919-420-2260

601 Pennsylvania Avenue, N.W.
North Building, 11th Floor
Washington, DC 20004-2601
202-756-3300
Fax. 202-756-3333

07SEG0057510

March 31, 2000
Page 2

We have asked Quorum to send a copy of his personnel file to us and we will transmit it to you under separate cover once it arrives.

4. Pursuant to request five, our clients are producing all of the CDM Change Requests Forms from October 1997 to present. We understand it would require a substantial effort to locate the Forms prior to this date. However, if you need these documents, please let us know.

5. We are producing Medicare and Medicaid cost report information in this production. Because of the volume of materials, we are not producing the underlying cost report documentation that the hospitals are required to submit each year to substantiate their cost reports. Again, if you need this information, please let us know.

6. Pursuant to our discussions with Paul Murphy, we are not producing the SEGMC or CMC billing software or software manuals.

7. Finally, this production will supplement SEGRMC's and CMC's prior productions in this case. We have included in this production documents that are responsive to the prior subpoenas.

A number of these documents, as well as documents previously produced to the government, contain information that is proprietary and business confidential to SEGRMC and CMC. These documents are exempt from the disclosure requirements of the Freedom of Information Act ("FOIA"). 5 U.S.C. § 552. The applicable exemptions and affected documents are:

1. Matters that are "trade secrets and commercial or financial information." 5 U.S.C. § 552(b)(4). These documents in the current production and the documents otherwise obtained through subpoena by the government are:

   - Compliance-related information
   - Billing studies or billing information
   - Hospital Authority and SEGRMC/CMC committee minutes
   - Management Agreements

2. Matters that are "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. §552(b)(6). These documents include:

   - Personnel files (or parts of personnel files)
   - Employee or contractor names, addresses, birthdays, and social security numbers

07SEG0057511

March 31, 2000
Page 3

- Medicare beneficiary's name and address
- Individually identifiable medical information contained in medical records, laboratory requisitions, billing information or other sources

Due to the sensitive nature of these documents, our clients request that you notify us before disclosing any of the documents to any person outside your agencies.

Should you wish to discuss this matter further please contact me at your convenience.

Very truly yours,

William R. Mitchelson, Jr.

WRM:sh/Encl.
cc: Paul B. Murphy, Esq.

LEGAL01/10715164v1

07SEG0057512

# ALSTON&BIRD LLP

One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309-3424

404-881-7000
Fax: 404-881-7777
www.alston.com

William R. Mitchelson, Jr.                Direct Dial: 404-881-7661                E-mail: mmitchelson@alston.com

April 4, 2000

Paul B. Murphy, Esq.                      *VIA: Facsimile and U.S. Mail*
U.S. Department of Justice
Southern District of Georgia
P. O. Box 8999
Savannah, Georgia 31412

Re:    **Southeast Georgia Regional Medical Center and**
       **Camden Medical Center**

Dear Paul:

As you know, four boxes of documents in the custody and control of our clients, Southeast Georgia Regional Medical Center ("SGRMC") and Camden Medical Center ("CMC"), that are responsive to the subpoenas issued to them were produced to the government last week. These documents bear Bates Numbers SGR 51526 through SGR 61740 and CMC 218580 through CMC 219793. In reviewing these documents, you should be aware of the following:

1.    The fifth request asks for all SGRMC or CMC correspondence, directives, documents, manuals, memoranda, policies regarding billing procedures for durable medical equipment and medical/surgical supplies pertaining to private insurance companies and/or private individuals. Our clients have informed us there are no documents that are responsive to this request, although we are advised there may be SGRMC or CMC correspondence with private payors relating to specific patients. Please let us know if you would like this correspondence.

2.    Pursuant to request five, our clients are producing the Charge Description Master Change Request Forms from October 1997 to the present relating to DME and medical/surgical supplies. We understand from our clients that it would require a substantial effort to locate the Forms prior to this date. If you need these documents, however, please let us know and we will initiate efforts to locate them.

1211 East Morehead Street          3605 Glenwood Avenue, Suite 310          601 Pennsylvania Avenue, N.W.
P. O. Drawer 34009                 P. O. Drawer 31107                      North Building, 11th Floor
Charlotte, NC 28234-4009           Raleigh, NC 27622-1107                  Washington, DC 20004-2601
704-331-6000                       919-420-2200                            202-756-3300
Fax: 704-334-2014                  Fax: 919-420-2260                       Fax: 202-756-3333

07SEG0057513

April 4, 2000
Page 2

3.    The seventh request asks for the personnel file of James D. Benefield, Jr. Mr. Benefield has never been employed by SGRMC or CMC. Our clients, therefore, do not have a personnel file for Mr. Benefield that would be responsive to this request.

4.    The seventh request also asks for Raymond Owings' personnel file. Mr. Owings' personnel file is not in our client's custody and control. Mr. Owings is a Quorum employee. Quorum, therefore, maintains his personnel file. We have asked Quorum to send a copy of his personnel file to us and we will transmit it to you under separate cover once it arrives.

5.    We are producing Medicare and Medicaid cost report information in this production. Because of the volume of materials, we are not producing the underlying cost report documentation the Hospitals are required to submit each year to substantiate their cost reports. Again, if you need this information, please let us know.

6.    Pursuant to our discussions, we are not producing the SGRMC or CMC billing software or software manuals.

7.    Michelle Morris has a number of old e-mail messages that we are attempting to retrieve. We will forward any responsive e-mail to Agent Northrup as soon as this process is complete.

8.    This production will supplement SGRMC's and CMC's prior productions in this case. In an effort to be complete, we have included in this production additional documents recently discovered by us, but not previously produced that are responsive to the prior subpoenas received by our clients.

Finally, a number of the documents, as well as documents previously produced to the government, contain information that is proprietary and business confidential. These documents are exempt from the disclosure requirements of the Freedom of Information Act ("FOIA"). 5 U.S.C. § 552. The applicable exemptions and affected documents are:

1.    Matters that are "trade secrets and commercial or financial information." 5 U.S.C. § 552(b)(4). These documents in the current production and the documents otherwise obtained through subpoena by the government are:

- All compliance information
- Billing studies and billing information
- Hospital Authority and SGRMC/CMC committee minutes

07SEG0057514

April 4, 2000
Page 3

- Management Agreements

2. Matters that are "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. §552(b)(6). These documents include:

- Personnel files (or parts of personnel files)
- Employee names, addresses, birthdays, and social security numbers
- Medicare beneficiary names and addresses
- Individually identifiable medical information contained in medical records, laboratory requisitions, billing information or other sources

A number of the documents, as well as documents previously produced to the government also are protected from disclosure pursuant to the Georgia Open Records Act. Ga. Stat. Ann. Section 50-18-72. The Act protects medical records, trade secret and propriety commercial information of the nature described above. *Id.* Due to the sensitive nature of these documents, our clients, therefore, request that you notify us before disclosing any of the documents to any person outside the government.

Please do not hesitate to contact me if you have any questions or concerns regarding the above.

Very truly yours,

William R. Mitchelson, Jr.

WRM:sh/Encl.
cc: Michael I. Northrup

ATL01/10717678v1

07SEG0057515

# ALSTON&BIRD LLP

One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309-3424

404-881-7000
Fax: 404-881-7777
www.alston.com

William R. Mitchelson, Jr.                    Direct Dial: 404-881-7661                    E-mail: nmitchelson@alston.com

May 9, 2000

Paul B. Murphy, Esq.                                   *VIA: Facsimile and United States Mail*
U.S. Department of Justice
Southern District of Georgia
P. O. Box 8999
Savannah, Georgia  31412

   **Re: Southeast Georgia Regional Medical Center and**
     **Camden Medical Center**

Dear Paul:

   Transmitted with this letter is a copy of the current version of the privilege log in the above referenced matter. As you know, we are currently in the process of reviewing documents that may be responsive to the government's subpoena requests. As a result, we anticipate we will need to update this log as our document production progresses.

   Additionally, it has come to our attention that several privileged documents were inadvertently produced in response to the subpoenas served on Southeast Georgia Regional Medical Center and Camden Medical Center. We will provide you with a detailed list of these privileged documents. Accordingly, we respectfully request that, once these documents are identified, you either (i) return the documents and all copies to me, or (ii) confirm to me in writing that you have destroyed these documents and all copies. We, of course, will not argue any investigative taint relating to these inadvertently produced privileged documents that may have been viewed by the government in the interim period. We will provide this list of documents to you by Monday, May 15, 2000.

   Finally, attached are copies of the unredacted versions of documents SGR058124 and SGR058130, which we discussed on the telephone earlier today.

1211 East Morehead Street
P. O. Drawer 34009
Charlotte, NC 28234-4009
704-331-6000
Fax: 704-334-2014

3605 Glenwood Avenue, Suite 310
P. O. Drawer 31107
Raleigh, NC 27622-1107
919-420-2200
Fax: 919-420-2260

601 Pennsylvania Avenue, N.W.
North Building, 11th Floor
Washington, DC 20004-2601
202-756-3300
Fax: 202-756-3333

07SEG0057516

May 9, 2000
Page 2


        Please don't hesitate to contact me if you have any questions or concerns regarding the above

Very truly yours,

William R. Mitchelson, Jr.

WRM:sh/Encl.
ATL01/1074128lvl

07SEG0057517

# ALSTON&BIRD LLP

One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309-3424

404-881-7000
Fax: 404-881-7777
www.alston.com

William R. Mitchelson, Jr.                    Direct Dial: 404-881-7661                    E-mail: mmitchelson@alston.com

May 17, 2000

Paul B. Murphy, Esq.                                    *VIA: UPS Overnight Delivery*
U.S. Department of Justice
Southern District of Georgia
P. O. Box 8999
Savannah, Georgia  31412

> Re:    **Southeast Georgia Regional Medical Center and
> Camden Medical Center**

Dear Paul:

Transmitted with this letter is a detailed list of the privileged documents that were
inadvertently produced in response to the subpoenas served on Southeast Georgia
Regional Medical Center and Camden Medical Center. Also attached is the redacted
version of each document. We respectfully request that you either (i) return the
unredacted documents and all copies to me, or (ii) confirm to me in writing that you have
destroyed these documents and all copies. We, of course, will not argue any investigative
taint relating to these inadvertently produced privileged documents that may have been
viewed by the government in the interim period.

Please don't hesitate to contact me if you have any questions or concerns
regarding the above.

Very truly yours,

William R. Mitchelson, Jr.

WRM:sh/Encl.
ATL01/10746485v1

1211 East Morehead Street
P. O. Drawer 34009
Charlotte, NC 28234-4009
704-331-6000
Fax: 704-334-2014

3605 Glenwood Avenue, Suite 310
P. O. Drawer 31107
Raleigh, NC 27622-1107
919-420-2200
Fax: 919-420-2260

601 Pennsylvania Avenue, N.W.
North Building, 11th Floor
Washington, DC 20004-2601
202-756-3300
Fax: 202-756-3333

07SEG0057518

May 17, 2000
Page 2


bc:     Mr. Wallace E. Harrell (w/ encls.)
        Ms. Dorothy Yates Kirkley (w/ encls.)
        Mr. John G. Malcolm (w/ encls.)

07SEG0057519

# ALSTON&BIRD LLP

One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309-3424

404-881-7000
Fax: 404-881-7777
www.alston.com

William R. Mitchelson, Jr.                    Direct Dial: 404-881-7661                    E-mail: mmitchelson@alston.com

May 23, 2000

Paul B. Murphy, Esq.                          *VIA: UPS Overnight Delivery*
U.S. Department of Justice
Southern District of Georgia
100 Bull Street
Savannah, Georgia  31401

Re:    **Southeast Georgia Regional Medical Center and**
       **Camden Medical Center**

Dear Paul:

Transmitted with this letter are copies of the documents you requested in your May 18, 2000, letter and an updated privileged documents log.  A few of the requested documents are being provided in their unredacted form; however, the majority remain redacted because they relate to privileged communications.  Where the redactions remain we have included a general description of the subject matter discussed.

Please don't hesitate to contact me if you have any questions or concerns regarding the above.

Very truly yours,

William R. Mitchelson, Jr.

WRM:sh/Encl.
LEGAL01/10750396v1

1211 East Morehead Street          3605 Glenwood Avenue, Suite 310          601 Pennsylvania Avenue, N W
P. O. Drawer 34009                 P. O. Drawer 31107                       North Building, 11th Floor
Charlotte, NC 28234-4009           Raleigh, NC 27622-1107                   Washington, DC 20004-2601
704-331-6000                       919-420-2200                             202-756-3300
Fax: 704-334-2014                  Fax: 919-420-2260                        Fax: 202 756 3333

07SEG0057520

May 23, 2000
Page 2

bc:    Mr. Wallace E. Harrell (w/ encls.)
        Ms. Dorothy Yates Kirkley (w/ encls.)
        Mr. John G. Malcolm (w/ encls.)

07SEG0057521

# ALSTON&BIRD LLP

One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309-3424

404-881-7000
Fax 404-881-4777
www.alston.com

Kurt R. Erskine                          Direct Dial: 404-881-7932                     E-mail: kerskine@alston.com

July 10, 2000

Michael L. Northrup, Special Agent
Department of Defense
Defense Criminal Investigative Service
Southeast Field Office
2400 Herodian Way, Suite 420
Smyrna, Georgia 30080-8500

> Re:    **Southeast Georgia Regional Medical Center and Camden Medical Center**

Dear Mr. Northrup:

Transmitted with this letter are additional documents that are responsive to the *subpoena duces tecum* issued to Southeast Georgia Regional Medical Center and Camden Medical Center. These documents bear Bates numbers SGR 61741 through SGR 61810, SGR 63262 through SGR 63940.

Please do not hesitate to contact me if you have any questions or concerns regarding this matter.

Sincerely,

Kurt R. Erskine

KRE:sh/Encls.
cc:  Paul Murphy, Esq. (w/o encls.)
ATL01/10778764v1

1211 East Morehead Street
P. O. Drawer 34009
Charlotte, NC 28234-4009
704-331-6000
Fax 704-334-2014

3605 Glenwood Avenue, Suite 310
P. O. Drawer 31107
Raleigh, NC 27622-1107
919-420-2200
Fax 919-420-2260

601 Pennsylvania Avenue, N.W
North Building, 11th Floor
Washington, DC 20004-2601
202-756-3300
Fax 202-756-3333

07SEG0057522

Michael L. Northrup, Special Agent
July 10, 2000
Page 2

bcc:    Mitch Mitchelson, Esq. (w/o encls.)
        Nancy Greenwood, Esq. (w/o encls.)

07SEG0057523

# ALSTON&BIRD LLP

One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309-3424

404-881-7000
Fax: 404-881-7777
www.alston.com

William R. Mitchelson, Jr.                   Direct Dial: 404-881-7661            E-mail: mmitchelson@alston.com

July 17, 2000

Paul B. Murphy, Esq.
U.S. Department of Justice
Southern District of Georgia
P. O. Box 8999
Savannah, Georgia 31412

> Re:   **Southeast Georgia Regional Medical Center/**
>        **Camden Medical Center Investigation**

Dear Paul:

We are in receipt of your letter of July 10, 2000. We would like to respond to your concerns.

As a preliminary matter, we want to assure you that Southeast Georgia Regional Medical Center ("Southeast Georgia") and Camden Medical Center ("Camden") take the government's investigation and its requests for information very seriously. The hospitals' employees have worked extremely hard to be responsive to the government's requests and to cooperate with its investigation. Southeast Georgia and Camden, as you are aware, are small, rural providers. As such, the hospitals have made great efforts to respond to what have proven to be expansive and voluminous requests for documents and information, while continuing to perform their important patient care and administrative responsibilities, all with a staff commensurate with these hospitals' size. Nevertheless, since January 1, 2000, the hospitals have produced approximately 65,000 documents to the government. In all, the hospitals have produced approximately 83,000 documents since the initiation of the government's inquiry. The number of documents assembled and reviewed for responsiveness likely exceeds twice that number.

The breadth of the government's subpoena requests has compounded the difficult task of responding. Request 2(d) of the first and second subpoenas, for example, calls for "any and all hospital correspondence, directives, documents, manuals, memoranda or policy regarding hospital billing procedures, including, *but not limited to*, billing for DME and medical/surgical supplies." (Emphasis supplied). This request is not limited to DME and medical/surgical supplies. Instead, it covers every billing procedure for every

1211 East Morehead Street
P. O. Drawer 34009
Charlotte, NC 28234-4009
704-331-6000
Fax: 704-334-2014

3605 Glenwood Avenue, Suite 310
P. O. Drawer 31107
Raleigh, NC 27622-1107
919-420-2200
Fax: 919-420-2260

601 Pennsylvania Avenue, N.W.
North Building, 11th Floor
Washington, DC 20004-2601
202-756-3300
Fax: 202-756-3333

07SEG0057524

Paul B. Murphy, Esq.
July 17, 2000
Page 2

healthcare service provided by the hospitals since October 1, 1995. It calls for thousands of documents. Despite the subpoenas' breadth, the hospitals have made every effort to respond fully and completely to each subpoena request.

Your letter expresses concern that the hospitals have not been timely in their production of documents, citing the hospital's failure to comply with the extended deadline for the two February subpoenas. However, it was our understanding, based on our conversations and your letter of March 6, 2000, that the hospitals were permitted to produce documents to the government on a "rolling" basis. As we discussed on several occasions, the subpoena requests have required us to review many thousands of potentially responsive documents, including over 15,000 separate e-mails. As you can imagine, this review has taken time, but has been done as expeditiously as possible, and in conformity with a "rolling" production. We disagree respectfully, but strongly, with any suggestion that these productions of documents have been untimely or delayed.

Your letter expresses concern about having received portions of the Quadramed Reports (the "Reports") for Southeast Georgia and Camden only several weeks ago. You will recall that we informed you of the existence of the Reports shortly after the issuance of the relevant subpoenas and that we had ongoing conversations about these Reports as well as the substantial questions of legal privilege relating to them. We did not come to an understanding with you on how to handle these self-evaluative materials until late April. After we reached an agreement on the production of these Reports, these materials were reviewed as expeditiously as possible and then produced to the government as agreed.

Finally, your letter expresses concern that a "working papers" file related to the Southeast Georgia and Camden room rate analyses had not been produced sooner. This delay was wholly inadvertent. The Southeast Georgia employee who created that file, Ruby Turner, left the hospital's employment on January 1, 2000, and returned to a position at Camden later this year. It is our understanding that Ms. Turner's files was in her old office among her personal files. It was simply overlooked when hospital employees were gathering documents in February and March. After Ms. Turner returned as an employee at Camden, we became aware of her file and immediately put it in line for review and production to the government. The Report resulting from Ms. Turner's work, of course, was produced to you when originally subpoenaed.

We hope this letter responds to your concerns. Southeast Georgia and Camden have shouldered substantial expenses related to responding to the government's various requests for documents and have undertaken to respond to these extensive requests in a conscientious manner, despite the substantial burdens this kind of investigation necessarily imposes upon a limited staff. Our clients will continue to respond to your office in a diligent manner. We would hope that, in seeking further information, your office will carefully consider the scope of its requests and their cost and impact so that

07SEG0057525

Paul B. Murphy, Esq.
July 17, 2000
Page 3

our client's investigative burdens are confined to those narrow issues related to the government's inquiry.

Please do not hesitate to contact me with any further questions or concerns that you have regarding this matter.

Very truly yours,

William R. Mitchelson, Jr.

cc:    Wallace Harrell, Esq.

WRM:sh
LEGAL01/10781866v1

07SEG0057526

# ALSTON&BIRD LLP

One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309-3424

404-881-7000
Fax 404-881-7777
www.alston.com

·· William R. Mitchelson, Jr.                    Direct Dial: 404-881-7661                    E-mail: mmitchelson@alston.com

November 16, 2000

*VIA: FACSIMILE AND UNITED STATES MAIL*

Paul B. Murphy, Esq.
United States Attorney's Office                    ***Subject To Fed. R. Crim. P. 11(e)(6),***
 for the Southern District of Georgia               ***And Fed. R. Evid. 408 And 410***
P. O. Box 8999
Savannah, Georgia 31412

      Re:    Southeast Georgia Regional Medical Center/
               Camden Medical Center Investigation

Dear Paul:

     I am writing to confirm my request for a meeting with you and Jim Coursey at your office in Savannah, Georgia, on Wednesday, November 22, 2000, at 1:00 p.m. I have requested this meeting to discuss a global resolution of all potential issues, civil and criminal, regarding the above-referenced matter. Because these discussions relate to compromise negotiations between my client and the government to resolve such issues, I propose these discussions be subject to Fed. R. Crim. P. 11(e)(6), and Fed. R. Evid. 408 and 410.

     I look forward to meeting with you next week.

                    Very truly yours,

                    William R. Mitchelson, Jr.

WRM:ncg
LEGAL01/10861533v1

1211 East Morehead Street
P. O. Drawer 34009
Charlotte, NC 28234-4009
704-331-6000
Fax 704-334-2014

3605 Glenwood Avenue
Suite 310
Raleigh, NC 27612-4957
919-420-2200
Fax 919-420-2260

601 Pennsylvania Avenue, N.W.
North Building, 11th Floor
Washington, DC 20004-2601
202-756-3300
Fax 202-756-3333

07SEG0057527

Paul B. Murphy, Esq.
November 16, 2000
Page 2

bcc:    Wallace E. Harrell, Jr., Esq. *(via facsimile)*
        Dorothy Yates Kirkley, Esq. *(via facsimile)*
        John G. Malcolm, Esq. *(via facsimile)*
        Thomas A. Withers, Esq. *(via facsimile)*
        Kurt R. Erskine, Esq.
        Nancy C. Greenwood, Esq.

07SEG0057528

# ALSTON&BIRD LLP

One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309-3424

404-881-7000
Fax 404-881-7777
www.alston.com

William R. Mitchelson, Jr.                Direct Dial: 404-881-7661            E-mail: mmitchelson@alston.com

December 8, 2000

*VIA: UNITED PARCEL SERVICE -- OVERNIGHT DELIVERY*

Paul B. Murphy, Esq.
United States Attorney's Office
  for the Southern District of Georgia
100 Bull Street
Savannah, Georgia 31401

> Re:    **Southeast Georgia Regional Medical Center and**
>        **Camden Medical Center**

Dear Paul:

Transmitted with this letter are two CD-Rom disks containing additional documents that are responsive to the previous subpoenas issued to Southeast Georgia Regional Medical Center and Camden Medical Center. These CD's bear the following writing and include reports from the listed months:

1. SE GA REG MED CTR BPBDOS 12/98-2/99 REVENUE STATS,
   Nov. 1995 -- Dec. 1995
   February 1996 -- April 1996
   September 1996
   December 1996 -- December 1999

2. CAMDEN MEDICAL CENTR REVENUE STATS REPORT 10/95-12/99,
   December 1995
   February 1996 -- April 1996
   September 1996
   December 1996 -- December 1999

It is our understanding that the Hospitals do not have reports for the months covered by the subpoena request but not included on the disks.

1211 East Morehead Street
P. O. Drawer 34009
Charlotte, NC 28234-4009
704-331-6000
Fax: 704-334-2014

3605 Glenwood Avenue
Suite 310
Raleigh, NC 27612-4957
919-420-2200
Fax 919-420-2260

601 Pennsylvania Avenue, N.W.
North Building, 11th Floor
Washington, DC 20004-2601
202-756-3300
Fax 202-756-3333

07SEG0057529

Paul B. Murphy, Esq.
December 8, 2000
Page 2

Please do not hesitate to contact me if you have any questions or concerns regarding this matter.

Very truly yours,

William R. Mitchelson, Jr.

WRM:ncg
Enclosures
LEGAL01/10873569v1
cc: Michael L. Northrup, Special Agent (w/o encls.)

07SEG0057530

Paul B. Murphy, Esq.
December 8, 2000
Page 3

bcc:    Kurt Erskine, Esq. (w/o encls.)
        Nancy Greenwood, Esq. (w/o encls.)

07SEG0057531

# ALSTON&BIRD LLP

One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309-3424

404-881-7000
Fax: 404-881-7777
www.alston.com

William R. Mitchelson, Jr.                    Direct Dial: 404-881-7661                    mrmitchelson@alston.com

May 4, 2001

***Confidential: Related to Settlement Discussions
and Subject to Rule 11 Fed. R. Crim. Proc.
and Rules 408 and 410 of Fed. R. Evid.***

Paul B. Murphy, Esq.
James L. Coursey, Jr., Esq.
United States Attorney's Office
U.S. District Court, Southern District
P. O. Box 8999
Savannah, Georgia 31412

      Re:     Southeast Georgia Regional Medical Center and Camden Medical Center
                Investigation

Gentlemen:

The purpose of this letter is to address certain issues relevant to your office's current investigation of Southeast Georgia Regional Medical Center ("SGR") and Camden Medical Center ("CMC") (collectively referred to herein as the "Hospitals"). It is our hope that this letter will further an eventual resolution of the government's investigation.

## I.    *Background of the Investigation*

In the Spring of 1999, the Department of Defense ("DoD"), through its Office of Inspector General, initiated a criminal investigation of CMC concerning its billing practices for patients whose care required the use of durable medical equipment ("DME"). We understand that the government was concerned that CMC may have improperly billed CHAMPUS and Tricare for DME after it received a CHAMPUS letter dated June 5, 1996. In that letter, the CHAMPUS intermediary alleged that DME should not be billed separately to CHAMPUS patients. *See* copy, at Tab 1.

We believe that the evidence shows that the Hospitals and its employees had no intention to and did not act to defraud the CHAMPUS or Tricare programs. Instead, the

Bank of America Plaza
101 South Tryon Street, Suite 4000
Charlotte, NC 28280-4000
704-444-1000
Fax: 704-444-1111

90 Park Avenue
New York, NY 10016
212-210-9400
Fax: 212-210-9444

3605 Glenwood Avenue
Suite 310
Raleigh, NC 27612-4957
919-420-2200
Fax: 919-420-2260

601 Pennsylvania Avenue, N.W
North Building, 11th Floor
Washington, DC 20004-2601
202-756-3300
Fax: 202-756-3333

07SEG0057532

Paul B. Murphy, Esq.
James L. Coursey, Jr., Esq.
May 4, 2001
Page 2

Hospitals have consistently, and with great effort, worked toward accommodating the billing method described in the CHAMPUS educational letter of June 5, 1996, even though it is not clear whether they were legally required to do so.

You have indicated that one of the government's more significant concerns relates to the time period between receipt of the June 5 letter and comprehensive changes to the billing system at SGR and CMC.

We believe the evidence shows that:

- prior to July 1996, although the Hospitals may not have been billing DME as outlined in the CHAMPUS educational letter, the Hospitals' claims did not contain false or fraudulent entries;

- after July 1, 1996, the Tricare program guidelines were in effect and permitted billing separately for DME; and

- even though the Hospitals were not required to do so, beginning in June 1997, the Hospitals took all the necessary steps to adjust their billing method to incorporate DME usage charges into their room rates.

## II.   *Factual Overview of the Case*

On June 5, 1996, CHAMPUS sent a letter to CMC that purported to explain the CHAMPUS policy regarding billing for DME under the CHAMPUS program. Jim Anderson and David Boland received that letter at the end of July 1996.[1] The letter stated, in pertinent part:

> We found that [CMC] bills CHAMPUS separate fees for DME on inpatient claims.
>
> CHAMPUS policy excludes separate payment for DME, such as IV pumps, suction machines, ventilators, croupettes, thermal blankets, etc. when the patient is hospitalized. These items are to be included in the overall room rate.
>
> Under the CHAMPUS DME Policy, rentals (separate fees) must be included in the room/board charges and cannot be billed separately to either CHAMPUS or the beneficiary.

---

[1]   Beginning in 1993 or early 1994, the Business Office at SGR managed the billing function for both Hospitals. As a result, letters received at CMC regarding billing issues were forwarded to SGR's Business Office.

07SEG0057533

Paul B. Murphy, Esq.
James L. Coursey, Jr., Esq.
May 4, 2001
Page 3

> All rental charges, billed separately, will be denied (This charge
> included in a paid service).

The letter, however, failed to cite to any specific CHAMPUS or Tricare regulation or policy that requires CHAMPUS or Tricare providers to include DME in its room rate. To date, the Hospital is unaware of any such policy or regulation.

At that time, the Hospitals did not include DME in their room rate, but instead, as suggested in the CHAMPUS letter, billed for DME separately. Because the CHAMPUS educational letter appeared to require a significant change to CMC's billing procedures, Jim Anderson immediately discussed it with Ray Owings, SGR's Chief Financial Officer. It was unclear, however, whether this CHAMPUS requirement was even applicable, given the fact that, effective July 1, 1996, the Hospitals were participating in the Tricare program, and were subject to the terms of a new interim contract with Humana Military Healthcare Services ("Humana").[2]

In May 1997, the SGR Business Office received a refund-demand letter addressed to CMC from Palmetto Government Benefits Administrators ("PGBA"), Humana's claims processor. PGBA informed CMC that upon re-review of CMC's 1993 and 1994 claims, it identified an overpayment of just over $9,900 relating to CMC's failure to include DME in its billed room rate. *See* letter, at Tab 5. PGBA requested an immediate refund of the full amount, and provided instructions with regard to CMC's right to appeal the decision within 90 days.

On May 29, 1997, in immediate response to the PGBA letter, Anderson called Jack Yost of Tricare, and faxed a copy of the PGBA letter to him. Thereafter, at the instruction of Owings, Anderson made a verbal appeal of the $9,900 refund request to Sandra Stuckey, Team Leader at PGBA, arguing that because DME usage was an allowable charge under the CHAMPUS program, and because CMC's room rate did not include the use of DME, the charge for DME, even though separately itemized, should not be denied.[3] Anderson also pointed out that, because Tricare was severely behind in paying the Hospitals' claims, CMC should not be required to refund the overpayment.

---

[2]    In late 1994 and early 1995 the Defense Department began implementing a new "Tricare" managed-care program for service members and their families. That program was to be implemented over the course of several years throughout the United States. In November 1995, Tricare announced the award of a $3.78 billion contract to Humana for CHAMPUS/Tricare health care delivery and managed-care support services in Regions 3 and 4, which include Georgia. *See* a copy, at Tab 2. In April 1996, the Hospitals entered into Interim Agreements with Humana to provide healthcare services under the Tricare program. *See* the agreements, at Tabs 3 and 4.

[3]    Because the CHAMPUS program allowed the DME usage at issue, the Hospitals believed that this overpayment determination simply challenged the manner in which the Hospitals accounted for DME on its bills, not the appropriateness of the charge itself. *See* 32 C.F.R. 199.4, attached at Tab 12.

07SEG0057534

Paul B. Murphy, Esq.
James L. Coursey, Jr., Esq.
May 4, 2001
Page 4

On July 14, 1997, Anderson sent a formal appeal letter to Stuckey at PGBA stating that "CMC does not feel that a refund is justified due to the Tricare payment delays experienced by our facility." Anderson noted that "the interest alone that could have been earned on the outstanding accounts receivable far exceeds the amount of the refund request." *See* letter, at Tab 6. While that appeal was underway, PGBA began withholding payments on claims submitted by CMC and off-setting them against the $9,900 overpayment. *See* letter, at Tab 7.

During this same time period, as mentioned above, the Hospitals were becoming increasingly concerned about the delayed Tricare payments from Humana. Accordingly, to reduce the chance of further delays, a decision was made to adjust the Hospitals' billing procedure to accommodate the policy set forth in the CHAMPUS educational letter, even though the adjustment was not required under the Humana contract, or the Tricare Provider Handbook.[4]

In August 1997, while SGR was taking steps to eliminate DME from the room rate, the DoD denied the Hospitals' PGBA appeal. In a letter dated August 19, 1997, the DoD stated that it was unable to offset liability under CHAMPUS with funds owed to providers under Tricare because the two programs differed fundamentally in the way the government paid its contractors. Specifically, the letter stated:

> The overpayments were for care provided in 1993 and 1994. At that time, PGBA disbursed government funds when paying claims for care provided to CHAMPUS eligible beneficiaries for the State of Georgia. The cost of processing the claims was the basis for the contract with PGBA.
>
> ... In June 1996, Humana Military Healthcare Services (HMHS), became responsible for handling claims for beneficiaries living in Georgia. *The cost of the actual health care as well as the cost to process the claims were included in the contract awarded to HMHS. There are a few claims where the HMHS payment is actually made with government funds.* On these claims, PGBA (who is now a subcontractor to HMHS) has offset the payments and applied them to the outstanding overpayment.
>
> For the reasons explained above, it is not possible to waive the $9,940.00 overpayment. Due to the circumstances, interest, penalty and administrative charges will be waived.

---

4    Discussed in the Legal Analysis section below, at Section III. B.

07SEG0057535

Paul B. Murphy, Esq.
James L. Coursey, Jr., Esq.
May 4, 2001
Page 5

*See* letter, at Tab 8 (emphasis supplied). On August 25, 1997, the Hospital sent a check to PGBA to cover the alleged overpayment. *See* letter, at Tab 9.

The DoD letter itself confirms that the Tricare program funds and procedures in effect beginning on July 1, 1996, were different from those in effect under CHAMPUS in earlier years. Indeed, reimbursement and billing rules were both provided for in and subject to the provisions of the Interim Agreements. Nevertheless, the Hospitals, out of an abundance of caution, continued their efforts to change their entire billing system (for all payors), rolling DME into the room rate as suggested by the June 5 letter from CHAMPUS.

In December 1997, Ruby Turner, at the direction of Owings, and with the assistance of other SGR Business Office employees, prepared a Room Rate Analysis for SGR. *See* analysis, at Tab 10. In that analysis, Turner listed all of the DME items that had been identified to be eliminated. She also listed the volume of charges under each item by payor, and calculated how much the room rate would need to be increased to cover the elimination of those individualized charges. The result was a *revenue-neutral* adjustment to the billing system at SGR.

In January 1998, the new room rates were approved by the Authority Board, and the changes became effective February 1998. Concurrently, the SGR Department Heads were asked to submit CDM Change Forms requesting that the appropriate charges be turned off.

Throughout the Spring of 1998, a similar process was followed at CMC. In September 1998, Turner prepared a similar revenue-neutral analysis for CMC, and those room rate changes went into effect shortly thereafter.[5]

## III.    *Legal Analysis*

The government has used a variety of criminal statutes to pursue claims against a health care provider that the government believes has submitted false or fraudulent claims in connection with the provision of health care services. *See e.g.* 18 U.S.C. § 287 (criminal false claims), 18 U.S.C. § 1347 (health care fraud), 18 U.S.C. §1341 (mail fraud), and 18 U.S.C. §1343 (wire fraud). While these statutes have different elements, collectively they require proof of, at a minimum, (A) the existence of a "false, fictitious, or fraudulent" claim or representation; and (B) actual knowledge by the defendant that

---

[5]    *See* analysis, at Tab 11.

07SEG0057536

Paul B. Murphy, Esq.
James L. Coursey, Jr., Esq.
May 4, 2001
Page 6

the submitted claim was false. *See e.g.*, 18 U.S.C. §§ 287, 1347.[6] Moreover, under both the Civil False Claims Act and 18 U.S.C. § 287, the government must also prove a claim against the United States. *See* 31 U.S.C. § 3729. We believe that the evidence in this case shows that the Hospitals never submitted false claims or engaged in fraud of any kind.

### A.    *The Hospitals Did Not Create Or Submit False Claims*

The Hospitals did not submit claims that included either hidden charges or double-billing for the use of DME, as discussed more fully below.

#### 1.    The Hospitals did not use an improper revenue code to disguise DME

CHAMPUS policies require hospitals to associate each billed item with a particular "UB-92" code, also known as a revenue code. The Hospitals have historically associated "270" revenue codes with charges for the use of DME, rather than "290" codes, which they believed were reserved for durable medical equipment suppliers. As employees of the Hospitals have stated, they believed that the "290" codes were more likely to relate to the sale or rental of DME by a DME supply company, rather than the use of DME by an inpatient in a hospital.

Although the government has suggested that the Hospitals' claims were rendered false by the use of revenue code 270, that contention is incorrect for two reasons: (a) under the regulations, the Hospitals could reasonably conclude that revenue code 270, relating to supplies, was the proper code to identify DME usage; and (b) even if revenue code 290 was more appropriate for usage charges associated with DME than revenue code 270, the submission of those services under the wrong number should not be interpreted as the submission of a false claim because the charges included under that code were Covered Services under the CHAMPUS and Tricare programs.

### (a) The 270 revenue codes are proper to denote DME usage.

Under the CHAMPUS program rules, "covered hospital services and supplies" include "durable medical equipment, medical supplies, and dressings *as a supply of a hospital*." 32 C.F.R. § 199.4(b)(5)(D)(vi) (emphasis supplied). The Hospitals' billing practices were consistent with this rule. Unlike the circumstances where DME is given to

---

6    While, under the Civil False Claims Act, the government is not required to show actual knowledge, it must still show "acts in deliberate ignorance of the truth or falsity of the information," or "acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b). As explained more fully below, because the Hospitals could reasonably believe, based on the relevant contractual provisions and regulations, that their billing methodology with regard to DME was correct, we do not believe the government could prove that the Hospitals had the requisite knowledge under the FCA.

07SEG0057537

Paul B. Murphy, Esq.
James L. Coursey, Jr., Esq.
May 4, 2001
Page 7

the patient for his or her use on a permanent basis, the charges in this case relate generally to items of equipment *used* in the care of the patient (as opposed to being delivered to the patient) and, thereafter, retained by the hospital for treatment of other patients. Such items are items of "durable medical equipment . . . [retained] . . . as a supply of the hospital." The language of that regulation supports the Hospitals' belief that code 270 is the appropriate code for the use of DME, because revenue code 270 applies to hospital medical and surgical *supplies*.

### (b) Use of DME, even if mislabeled, is a covered service.

Moreover, even if the Hospitals used the wrong revenue code to identify the use of DME, the submission of a claim requesting reimbursement for those charges cannot be considered "false, fictitious, or fraudulent" because the use of DME is a covered hospital service or supply.

Covered hospital services and supplies, include, among other things:

- Durable medical equipment, medical supplies essential to a surgical procedure (such as artificial heart valve and artificial ball and socket joint), sterile trays, casts, and orthopedic hardware. Use of durable medical equipment is restricted to an inpatient basis. 32 C.F.R. § 199.4(b)(2)(vi).

Hospital benefits include:

- Durable medical equipment, medical supplies, and dressings *as a supply of a hospital*, under the following conditions,

    (A) if ordinarily furnished by the facility for the care and treatment of patients; and

    (B) if specifically related to, and in connection with, the condition for which the patient is being treated; and

    (C) if ordinarily furnished to a patient for use in the hospital (except in the case of a disposable item); and

    (D) use of durable medical equipment is limited to those items provided while the patient is an inpatient.

    32 C.F.R. § 199.4(b)(5)(D)(vi) (emphasis supplied). *See* regulation, at Tab 12.

07SEG0057538

Paul B. Murphy, Esq.
James L. Coursey, Jr., Esq.
May 4, 2001
Page 8

Because the charges in question meet the criteria set forth above for DME, they are Covered Services.

### 2.    The Hospitals did not double-bill for DME

The government has raised the issue that the Hospitals may have been double-billing for DME by including the use of DME in the room rate, and also billing separately for that charge. Double-billing, however, would only arise if the Hospitals' room rate included DME before June 1996. We are unaware of any evidence that would support such a claim. In fact, the efforts taken by the Hospitals in late 1997 and early 1998 to calculate a revenue-neutral increase of room rates, to correspond with the elimination of separately billed DME on the claims, suggests otherwise.

### B.    *The Hospitals Lacked Knowledge That Any Claims Were False*

Based on our investigation, there is no evidence to suggest that the Hospitals or their employees intended to submit false claims, or had any knowledge of the falsity of claims, when they submitted CHAMPUS or Tricare claims. Instead, the evidence shows that the Hospitals' employees are good, honest people, in relatively small rural hospitals, trying to comply with complex billing issues, that change at irregular intervals. The Hospitals were continuously working to meet the special billing needs of each payor.

To that end, in early 1996, the Hospitals hired a consultant to review their entire billing system for accuracy. In 1999, they hired another consultant to perform a similar review. In the interim, the Hospitals formed committees to review billing issues, and instituted a compliance department to review their processes.

Before receiving the June 5, 1996, educational letter from CHAMPUS, the Hospitals were unaware of any requirement to include DME in the room rate. In fact, that directive appears to directly conflict with the CHAMPUS program regulations. According to those regulations:

- providers were to submit "fully itemized and sufficiently descriptive [bills] to permit CHAMPUS to determine whether benefits are authorized." 32 C.F.R. § 199.4(b)(1)(i); and

- "room and board" was listed as including "special diets, laundry services, and other general housekeeping support services (in-patient only)." 32 C.F.R. § 199.4(b)(2)(i). *See* regulation at Tab 12.

To date, we have not located any CHAMPUS rules or regulations that required DME charges to be rolled into the Hospitals' room rates. Accordingly, the evidence does not support a claim that, prior to the Hospitals' receipt of the CHAMPUS educational letter,

07SEG0057539

Paul B. Murphy, Esq.
James L. Coursey, Jr., Esq.
May 4, 2001
Page 9

they had any notice that CHAMPUS believed the Hospitals' billing practices regarding patient usage of DME was improper under its rules.

Further, even after the Hospitals received the CHAMPUS educational letter, they did not knowingly submit false claims. As mentioned above, the Hospitals became aware of the CHAMPUS letter in July 1996. At that time the Hospitals were no longer under the old CHAMPUS program, but instead were providing services and submitting claims under the new Tricare program. As such, the Hospitals justifiably – and correctly – believed that any directive from CHAMPUS was preempted by the Hospitals' contract with Humana.[7]

The SGR and CMC agreements unambiguously state that, with the exception of a special case-rate program for three specific labor-and-delivery services, Humana would receive a 12% discount "off the gross billed hospital in-patient and out-patient charges, less any deductibles and/or co-insurance for covered services provided to members or to active duty military personnel." No other billing methodology was specified within the contract, or discussed in negotiations.[8]

Moreover, Tricare's 1996 Provider Manual instructs providers that "when filing claims for Tricare patients, always file your normal charges. Our claims system will automatically adjust payment to your Tricare payment or your normal charges, whichever is less." *See* Tricare Manual, at p. 41, attached at Tab 13. The Hospitals met their obligations under the contract and the Tricare Provider Manual, and had no knowledge that alternative billing procedures were in place.

### C.    *The False Claims Act Requires A Claim Against The United States*

Finally, to recover under the Civil False Claims Act ("FCA") and 18 U.S.C. § 287, the government must prove a claim against the United States Treasury. 31 U.S.C. § 3729 *et. seq.* The FCA defines a claim to include:

> any request or demand, whether under a contract or otherwise, for money or property which is made to a contractor, grantee, or other recipient if the United States Government provides any portion of the money or property *which is requested or demanded*, or if the

---

[7]    *See* 32 C.F.R. § 199.4(a)(1)(ii) (providing that in areas where Tricare had been implemented, Tricare provisions would take prec xdence over conflicting CHAMPUS program provisions.)

[8]    In one of our earlier conversations you suggested that during the contract negotiations Humana may have been led to believe that the Hospitals were including DME in their room rate, but later discovered – upon the receipt of claims – that DME was billed separately. We believe the evidence will show that during the negotiations of the interim agreements for the Hospitals, no billing methodology with regard to patients' use of DME was ever discussed.

07SEG0057540

Paul B. Murphy, Esq.
James L. Coursey, Jr., Esq.
May 4, 2001
Page 10

> Government will reimburse such contractor, grantee, or other
> recipient for any portion of the money or property which is
> requested or demanded.   31 U.S.C § 3729(c)(emphasis supplied).

As articulated by the Department of Defense in its August 1997 letter, however, the money requested under each claim submitted by the Hospitals after the execution of the Interim Agreements was Humana's, not the government's.[9] Accordingly, the claims submitted by the Hospitals after July 1, 1996, were not claims submitted against United States' funds.  Instead, the evidence shows that all claims after July 1996 were submitted against Humana, pursuant to the Hospitals' contracts with Humana.  Accordingly, the FCA does not apply.

## IV.    *Conclusion*

As I am sure you are aware, this investigation has been a tremendous drain on the resources of these facilities, both in manpower, and money.  We know that the government has expended similar resources.  The Hospitals have fully cooperated with the investigation, and will continue to do so as we discuss a global settlement.  Although the Hospitals do not believe that they have engaged in any wrongdoing, there is certainly a value to putting this investigation behind us, and resolving any outstanding uncertainty on the part of your office or the Tricare program.  I am hopeful that through our continued discussions we may find a mutually agreeable resolution to this matter in the very near future.

Very truly yours,

William R. Mitchelson, Jr.

WRM:ncg

cc:    Wallace E. Harrell, Esq.
       Kurt R. Erskine, Esq.

Attachments

LEGAL01/10958458v6

---

[9]    *See* DoD letter, attached at Tab 8, stating that after June 1996, "[t]here are [] few claims where the [Humana] payment is actually made with government funds."

07SEG0057541

Paul B. Murphy, Esq.
James L. Coursey, Jr., Esq.
May 4, 2001
Page 11

**REDACTED**

# ALSTON&BIRD LLP

One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309-3424

404-881-7000
Fax 404-881-7777
www.alston.com

William R. Mitchelson, Jr.                Direct Dial: 404-881-7661          E-mail: nmitchelson@alston.com

June 28, 2002

*Via Facsimile (912) 652-4388*

Paul B. Murphy, Esq.
U.S. Department of Justice
Southern District of Georgia
P. O. Box 8999
Savannah, Georgia 31412

> **Re:   Southeast Georgia Regional Medical Center and
> Camden Medical Center Investigation**

Dear Paul:

During our most recent telephone conversation, you asked that we identify the Quadramed Chargemaster Review documents that relate to durable medical equipment and medical-surgical supplies. These documents bear Bates Numbers SGR 59468 through SGR 59683 and SGR 60147 through SGR 60225.

Please do not hesitate to contact me if you have any questions or concerns regarding this matter.

Very truly yours,

William R. Mitchelson, Jr.

WRM:sh
cc: Michael Northrup
LEGAL01/10772954v1

| | | |
|---|---|---|
| 1211 East Morehead Street | 3605 Glenwood Avenue, Suite 310 | 601 Pennsylvania Avenue, N.W. |
| P. O. Drawer 34009 | P. O. Drawer 31107 | North Building, 11th Floor |
| Charlotte, NC 28234-4009 | Raleigh, NC 27622-1107 | Washington, DC 20004-2601 |
| 704-331-6000 | 919-420-2200 | 202-756-3300 |
| Fax: 704-334-2014 | Fax: 919-420-2260 | Fax: 202-756-3333 |

07SEG0057543

Paul B. Murphy, Esq.
June 28, 2002
Page 2

bcc:    Kurt Erskine, Esq.
        Nancy Greenwood, Esq.

07SEG0057544